**HOLDER v. MARTIN.**
No. 3514.

Court of Civil Appeals of Texas.
Beaumont.

July 21, 1939.

Rehearing Denied July 26, 1939.

Wood & Morrow and Newton Gresham, all of Houston, Manry & Cochran, of Livingston, and Walter E. Boyd, of Houston, for appellant.

Campbell & Foreman, of Livingston, for appellee.

WALKER, Chief Justice.

This suit was brought by appellee, Willie Thomas Martin, a minor, by his father, L. A. Martin, as next friend, against appellant, Ed Holder, for damages for personal injuries sustained by him on the 11th day of October, 1937, while riding in a school bus of the Leggett Independent School District; appellant was the driver of the bus. On a trial to a jury, he was convicted of negligence, as charged by appellee in his petition, and appellee's damages were assessed at $4,750. Appellant has duly prosecuted his appeal to this court from the judgment rendered against him in favor of appellee on the verdict of the jury.

No attack is made on the jury's findings, convicting appellee of negligence. Appellant assigns error that the verdict, in the sum of $4,750, was excessive. We overrule this assignment without reviewing the evidence. It is sufficient to say that the evidence overwhelmingly supports the amount of damages assessed against appellant.

Appellant was one of the school bus drivers of Leggett Independent School District, and also a farmer. The record indicates that he was a poor man. One of appellant's attorneys, on the voir dire examination of the jury, asked one of the jurors, in the presence and hearing of the entire panel, whether he would be prejudiced against appellant because members of the Board of Trustees of Leggett Independent School District "were down here interested in the case"; he also asked one of the jurors, in the presence and hearing of the others, whether he would be prejudiced against appellant or the Board of Trustees because they "had seen fit to go to Houston and employ Mr. Gresham to assist him in the case." On this statement, the following proceedings did not constitute error:

(a) While appellant was on the witness stand, appellee's counsel asked him whether he had ever been in Mr. Gresham's office in Houston, to which appellant answered, "No, sir." On appellant's exception that the question suggested to the jury "that an insurance company, or someone else, not a party to the suit, and not the defendant, would have to pay the judgment the plaintiff might recover against the defendant", the court struck out the question and the answer.

(b) On their voir dire examination, appellee's counsel asked one member of the jury panel, in the presence and hearing of the others, the following question: "Now, it would not make any difference to you if you thought this young man (plaintiff) suffered five, ten, fifteen or twenty thousand dollars, or five, ten, fifteen or twenty cents, you would put the amount in there that you thought he was entitled to, whether he (defendant) had to pay it, or anybody had to pay it;" and thereafter said counsel asked another member of the panel: "If you were selected as a juror and the court asked you about what amount of damages this young man (plaintiff) has suffered, if any, and you saw fit to put in an amount, would you be interested in who had to pay it, or whether it was ever paid?"

On appellant's exception to the question, appellee's counsel said: "I asked him if he would be interested in who had to pay it, or whether it was ever paid." Thereupon, appellant's objections were sustained. Appellee's counsel then asked each member of the jury panel the following question: "If you saw fit under the testimony in this case, and the court does ask you about damages, and you saw fit to insert a certain amount in there, would you be interested, in fixing that amount, as to whether or not it could be collected? You would not be interested in that; you would leave that up to the lawyers and let them worry about that, if you saw fit to do so." Appellant reserved the same exception to this question that he had reserved to the question regarding Mr. Gresham, set forth above.

(c) In his argument to the jury, Judge Campbell made the following argument: "I have never seen a more unfair tactic than Mr. Cochran (one of the attorneys for defendant) indulged in when he was testing the jury panel in this case. How many times did he try to insinuate the taxpayers

of the Leggett Independent School District were involved in this? And he even went so far as to make the statement that Mr. Gresham (attorney for defendant) was employed by the Board of Trustees of the Leggett School. I say that is not true. Not a word of it. Mr. Cochran knew it was not. If that wasn't trying to pull the wool over your eyes, I don't know what it is." Mr. Z. L. Foreman, one of appellee's attorneys, made the following argument: "I have known Ed Holder (defendant) a long time. I have always thought he was my friend, and I have always been his friend. He is the first person in this character of case, where he was a citizen of this county, living here the most of his life, that I have ever gone to and asked about how a certain thing happened and he refused to tell me about it. And I don't blame you, Ed, for it; I think you were told to do it; and I don't think either one of you lawyers (defendant's lawyers) in this case did it." The same exceptions were reserved against counsel's argument that was reserved against the questions addressed to the jury, set forth above.

◼ Error is not shown under either of these three assignments. There was nothing in the questions to suggest that appellant was protected by liability insurance. By his own questions to the jury, appellant had informed them that the school board of the Leggett Independent School District was interested in this case to the extent of attending court and assisting in the preparation of the trial, and that they had employed counsel. It was appellant who injected the issue before the jury that possibly someone else might be interested in appellee's cause of action against appellant. He cannot now complain that appellee, on the facts put before the jury by his own examination, inquired whether or not such facts would affect their judgment, or whether or not they would render a judgment on the evidence introduced to them from the witness stand and the law given them in charge by the court. In this connection, the court qualified appellant's bills of exception by finding that each of the jurors, on his voir dire examination in connection with the questions asked him by appellee's counsel, testified that he would render his judgment on the law and the evidence.

◼ L. A. Martin, appellee's father and next friend, testifying as a witness, stated that, two or three weeks prior to the accident in which his son was hurt, he rode in the school bus while appellant was driving, and that appellant used the "gear" in slowing the bus down and stopping it; that on one occasion appellant said to him, "My brakes just won't hold nothing"; on cross examination he testified that he knew that it was not a safe and proper way to stop the bus with the "gear"; L. A. Martin had two children riding regularly on the bus. On appellee's exception, the court refused to permit Mr. Martin to testify that he did not complain, either to the Superintendent of the schools or to the School Board, of the defective condition of the brakes. There was no showing that Mr. Martin was placed in a position calling for him to make this complaint; it would have been necessary for him to make a special trip to call upon the Superintendent or the Board to make the complaint. On this statement, the failure of Martin to make the complaint would not have constituted an element of impeachment against his testimony.

◼ Bob Lisenbee, a mechanic, brought the bus back to town after the accident and repaired it; he was living at Livingston and was in Livingston, where the case was being tried, during the trial, and within a few moments could have been called into court. Bob Lisenbee, in repairing the school bus, was an employee of Leggett Independent School District and not of appellant. He was not called as a witness by either party. Appellant reserved his exceptions to the following argument by appellee's counsel: "In addition there was Bob Lisenbee. Who is he? Bob Lisenbee is in town right now and was yesterday working for Phil Chapman at the same garage. They got Phil Chapman down here within four or five minutes, and if this steering gear was in the condition they say it was—if Bob would testify to that set of proof, and right here in the shadows of this court house * * * Mrs. Lisenbee worked for the Leggett School for eight or nine years. We are not going into the other person's camp to get a witness. You know that if Bob Lisenbee would have gotten on that stand and said the brakes were in perfect working order * * * and he was the man working on them." The facts do not invoke appellant's proposition: "It is well settled that where a person is as much within the control of one of the parties to the suit as he is of the other, and equally available to both parties, it is reversible error for one of the parties to

168

comment in argument to the jury on the failure of the other party to produce him, and to argue that such failure warranted the inference that the testimony of the person would have been unfavorable to such other party. San Antonio Public Service Co. v. Smith, Tex.Civ.App., 57 S.W.2d 179, error dismissed; Morgan · v. Maunders, Tex.Civ.App., 37 S.W.2d 791, error dismissed; Robbins v. Wynne, Tex.Com.App., 44 S.W.2d 946; Lottmann v. Cuilla, Tex. Com.App., 288 S.W. 123; Indemnity Ins. Co. of North America v. Harris, Tex.Civ. App., 53 S.W.2d 631; Metropolitan St. Ry. Co. v. Roberts, Tex.Civ.App., 142 S.W. 44." True, Bob Lisenbee was not appellant's employee; in repairing the bus he was an employee of Leggett Independent School District. But appellant himself had injected before the jury the fact that Leggett Independent School District was interested in the trial of this case, and in the judgment that might be rendered against appellant. Bob Lisenbee was not "as much within the control" of appellee as he was of appellant; appellant rested under the burden of introducing Bob Lisenbee as a witness, or of carrying the burden of the inferences deducible from his failure to introduce him. Missouri Pac. Ry. Co. v. White, 80 Tex. 202, 15 S.W. 808; Houston Elec. Co. v. Potter, Tex.Civ.App., 51 S.W.2d 754, error dismissed; Texas Indemnity Ins. Co. v. Dean, Tex.Civ.App., 77 S.W.2d 748, error dismissed; Dallas Ry. & Terminal Co. v. Garner, Tex.Civ.App., 42 S.W.2d 665.

■ Mr. Z. L. Foreman, counsel for appellee, made the following argument: "I have noticed and I know you have noticed that the opposing side is having Mr. Dahl (referring to the official court reporter) take down every word that I say. They had him take down every word Fox Campbell (one of the attorneys for plaintiff) said. But when Ernest Cochran and Newt Gresham (referring to attorneys for defendant) were up here, they did not have that done. Why do you suppose they were having that done? They have a perfect right to do it. They did it for this reason and no other: They know by the preponderance of the evidence and the greater weight of the credible testimony that they have lost this ball game, and they hope and they pray that Fox Campbell or myself will say some word that will be a reversible error in some higher court." The trial court sustained appellant's objection to the argument. Appellant brings forward in his brief the following assignment: "The argument was so plainly prejudicial that the instruction by the court to disregard same in all probability was of no avail, and this being true, the case should be reversed because of such improper argument." On the following authorities, Mr. Foreman's argument was not error: Decatur Cotton Seed Oil Co. v. Taylor, Tex.Civ.App., 182 S.W. 401, error refused; Commercial Standard Ins. Co. v. Shudde, Tex.Civ.App., 76 S.W.2d 561.

■ In his closing argument to the jury, appellee's counsel made the following argument: "When we began introducing these pictures (referring to the photographs of the scene of the accident) he (referring to one of the attorneys for defendant), saved a bill of exceptions to the introduction of these pictures, and said that they did not reflect the ground or the tree and that the road had been widened—the bill of exceptions he saved was as long as a tick law." No exception was reserved to the argument at the time it was made. Appellant now assigns error that "such argument was inflammatory, and prejudicial to the defendant, and an instruction from the court to the jury to disregard it would in all probability have been of no avail." The court made the following qualification to appellant's bill, complaining of this argument:

"With reference to Mr. Foreman's argument set out in the bill and beginning with the words, 'When we began to introduce these pictures', such argument so complained of was taken from the following portion of Mr. Foreman's argument.

"You know Ernest made a statement here that I don't see how he could get away from it. When these pictures were presented to this jury, he said that they were glad we introduced them, he said that they proved their case. Gentlemen of the jury, if they are sincere about that, and if they are not trying to pull the wool over your eyes about that, I want Mr. Gresham to answer this question: When we began introducing these pictures, he saved a bill of exception to the introduction of these pictures, and said they didn't reflect the ground or the tree, and that the road had been widened—the bill of exceptions he saved was as long as a tick law. Is Ernest honest with you or is Ernest trying to win the ball game? If anybody can show me a curve in that road fifteen feet from the log, they can see better than I can.'"

The argument was not error. Appellant objected to the pictures when offered but on his argument to the jury stated that he was glad they had been introduced and that they proved his case. The argument complained of constituted a legitimate reply to the argument of appellant's counsel.

The court submitted the following definition of the term "pecuniary loss"; "By 'pecuniary loss' is meant a monetary loss." Appellant reserved the following exceptions to the definition: "The defendant objects and excepts to the court's definition of the term 'pecuniary loss' because the same is too vague and general and is in the nature of a general charge and is no real explanation of the meaning of that term, and because the jury are left to speculate as to what is a monetary loss within the meaning of the law and are allowed to determine from their own deliberations what would be a monetary loss and the jury are not instructed what factors may be taken into consideration in arriving at monetary loss and are not instructed what they may not take into consideration in arriving at a monetary loss. Said definition is too incomplete and improper to be of any assistance to the jury." He has briefed his exceptions under the following proposition:

"In defining 'pecuniary loss' in the charge as follows: 'By "pecuniary loss" is meant a monetary loss,' which definition was duly and timely objected to by the defendant in writing, the trial court committed reversible error. 'Pecuniary loss' means a loss of money, or of something by which money or something of money value may be acquired."

■ These exceptions were too general. They did not direct the court's attention to any specific vice in the definition, nor to the error complained of by its fifth proposition. An exception to the court's charge should be so specific that the court could perfect his charge by incorporating therein the omissions complained of by the exception. Hartford Accident & Indemnity Co. v. Frye et al., Tex.Civ.App., 55 S.W. 2d 1092; Scruggs et al. v. Dean, Tex.Civ. App., 47 S.W.2d 378; Southwestern Bell Tel. Co. v. Ferris, Tex.Civ.App., 89 S.W.2d 229; McGraw v. Galveston, H. & S. A. Ry. Co., Tex.Civ.App., 182 S.W. 417; Chisos Mining Co. v. Llanez, Tex.Civ.App., 298 S.W. 642; Texas & P. Ry. Co. et al. v. Prunty, Tex.Civ.App., 233 S.W. 625; Fisheries Co. et al. v. McCoy, Tex.Civ.App., 202 S.W. 343; Walker v. Haley, 110 Tex. 50,

214 S.W. 295; Gaddis v. Junker, Tex.Civ. App., 29 S.W.2d 911; Isbell v. Lennox, 116 Tex. 522, 295 S.W. 920.

■ Again, the restricted meaning of the term "pecuniary loss," suggested by appellant's exceptions, was in his favor, and limited the jury in assessing the damages; appellant cannot complain of the charge on that ground. 3 Tex.Jur. 1269, Sec. 888.

■ We give special issue No. 13: "What sum of money, if any, do you find from a preponderance of the evidence, if paid now in cash, will fairly and reasonably compensate plaintiff, Willie Thomas Martin for injuries, if any, proximately resulting to him on account of the bus striking the tree on the occasion in question.

"Should your answer to the preceding issue be an amount of money, then and in that event your answer will be in Dollars and Cents.

"To aid you in answering the preceding question you are instructed that you may take into consideration the following elements of damages and none others:

"(a) The physical suffering, if any, of plaintiff, Willie Thomas Martin, from the date of said injuries, if any, to the present time that may have directly and proximately resulted to him from his injuries, if any, received as a result of the bus striking the tree.

"(b) The physical suffering, if any, which plaintiff, Willie Thomas Martin, will reasonably and probably undergo, if any, in the future as a direct and proximate result of the injuries, if any, received by him as a result of the bus striking the tree.

"(c) The pecuniary loss, if any, which plaintiff, Willie Thomas Martin, will in reasonable probability, suffer after reaching the age of 21 years, as a result of the injuries received by him, if any, when the bus struck the tree on the occasion in question."

Since they are not briefed, we do not bring forward the exceptions to the issue. The following exceptions reserved to section "c" of the court's charge, given in connection with special issue No. 13: "The defendant objects and excepts to the issue as a whole and particularly to Subdivision (c) thereof because the same is not raised by the pleadings and is broader than the evidence, and because the same submits an erroneous measure of damages, the future pecuniary loss not being an element of damages or the proper element of damages, and

because the jury are not sufficiently tole what is meant by pecuniary loss, and because it permits the recovery of double damages, to-wit, damages for pecuniary loss in addition to damages for physical suffering, and because it assumes that plaintiff will sustain future pecuniary loss by reason of his injuries, and because the same is not restricted to the pecuniary losses resulting from the negligence of the defendant, and because the same is not restricted to pecuniary loss which the defendant could have anticipated would result from his negligence, and because the same is not restricted to such pecuniary loss as the jury may find the plaintiff will in reasonable probability suffer in the future from his injuries, and because there is no proof that a pecuniary loss will be so suffered, and because by permitting recovery for pecuniary loss in addition to the other elements of damages submitted, the jury are permitted to return double damages, and because under the charge as given, the jury are allowed to speculate as to what pecuniary loss would be suffered, and what such pecuniary loss will be, and because such pecuniary loss, if any, is not an element of recoverable damages, and because the jury are not told what elements and factors make up pecuniary loss, and further because there is no showing in the record that plaintiff, at any time in the future, had he not been injured, would have been employed in any gainful or profitable occupation and no showing as to what money he may have earned in the future or what money he will earn in the future, and the issue as a whole, and particularly Subdivision (c) thereof are too vague and general and indifinite."

These exceptions are briefed under the following propositions:

"Sixth Proposition. Where the only element of pecuniary loss pleaded by the plaintiff was diminished earning capacity, the court instructed the jury over the written objections of the defendant timely filed in the damage issue that they could take into consideration certain nonpecuniary elements of damage, and: '(c) The *pecuniary loss,* if any, which plaintiff, Willie Thomas Martin, will in reasonable probability suffer after reaching the age of 21 years, as a result of the injuries received by him, if any, when the bus struck the tree on the occasion in question;' and in such instruction

the court committed reversible error, because such instruction permitted a recovery for elements of pecuniary damage not claimed in the petition.

"Seventh Proposition. Where the only element of pecuniary loss raised by the evidence was the diminished earning capacity of the plaintiff, and the court instructed the jury in the damage issue over the written objections of the defendant timely filed that they could take into consideration certain nonpecuniary elements of damage, and: '(c) The *pecuniary loss,* if any, which plaintiff, Willie Thomas Martin, will in reasonable probability, suffer after reaching the age of 21 years, as a result of the injuries received by him, if any, when the bus struck the tree on the occasion in question;' the court committed reversible error because such instruction permitted a recovery for elements of pecuniary damage not raised by the evidence.

"Eighth Proposition. The trial court in its submission of damage issue in this case involving a suit for damages for personal injuries sustained by minor plaintiff instructed the jury over the written objections of the defendant timely filed that they could take into consideration certain nonpecuniary elements of damages, and, also, '(c) The pecuniary loss, if any, which plaintiff, Willie Thomas Martin, will in reasonable probability suffer after reaching the age of twenty-one years, as a result of the injuries received by him, if any, when the bus struck the tree on the occasion in question,' and in such instruction the court committed reversible error; 'pecuniary loss' not being the proper measure of damages in this case, the true measure of damages in this respect being diminution of earning capacity after reaching the age of twenty-one years."

The exceptions were too general to direct the court's attention to any specific error in the charge, and certainly they did not direct his attention to his failure to add, after the words "pecuniary loss," the additional words, "as a result of plaintiff's diminished earning capacity." "Diminished earning capacity" was not an element of the exceptions.

The judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.