**AIRLINE MOTOR COACHES, Inc., v.
BENNETT et al.**

No. 4257.

Court of Civil Appeals of Texas. Beaumont.

Nov. 9, 1944.

Rehearing Denied Nov. 29, 1944.

Strasburger, Price, Holland, Kelton & Miller, of Dallas, and E. A. Coker and M. M. Feagin, both of Livingston, for appellant.

Campbell & Foreman, of Livingston, and Roy M. Jones and S. F. Hill, both of Houston, for appellees.

MURRAY, Justice.

W. B. Bennett and his wife, Mrs. Elva Bennett, were driving in their automobile with Mr. and Mrs. J. F. Campbell, driven by Mr. Campbell, on highway 59 on June 23, 1943, when the automobile was in a collision with a bus of Airline Motor Coaches, Inc., which occurred in Polk County, Texas, a short distance south of the Trinity River bridge. Mr. Bennett was killed in the wreck and Mrs. Bennett was severely injured. The bus was headed south towards Houston and the automobile in which the Bennetts were riding was proceeding in a northerly direction away from Houston. The collision occurred in the late afternoon at the north entrance to a slough bridge a short distance south of the main bridge across the Trinity River. Mrs. Elva Bennett brought suit against the bus company for damages for the injuries sustained by her and for damages for the death of her husband, and she was joined in the suit by W. B. Bennett, Jr., a minor son of the deceased by a former marriage, who sued by next friend for damages for the death of his father. They alleged that the bus driver operated the bus on his left-hand side of the road; that such bus driver failed to keep a proper lookout and that the bus driver failed to have the bus under proper control; that each of such acts was negligence and all of same were proximate causes of said collision. Among other defenses, the bus company defended upon the ground that Mr. and Mrs. Bennett owned the car involved in the accident and together with Mr. and Mrs. Campbell were on a joint mission; that there was intoxicating liquor in the automobile in question; that one or all of the occupants of the car were intoxicated and that while the bus was proceeding on its side of the highway in a careful and prudent manner, the collision was caused when the automobile suddenly changed its course and ran into the bus. Upon a jury verdict, the findings in which supported the contentions of the Bennetts, judgment was rendered against the bus company for $18,500 in favor of Mrs. Elva Bennett and $1,000 in favor of W. B. Bennett, Jr., and the bus company has perfected its appeal to this court.

The testimony is conflicting in regard to the position of the two vehicles immediately before and at the time of the collision. Some of the witnesses, particularly the passengers on the bus who testified, placed the bus on its right-hand side of the road until after the actual collision with the automobile. Other witnesses who were near-by at the time of the collision said the bus had either veered or glanced from a guard rail to the left-hand side of the road and there struck the automobile. The fact issues were properly submitted in the court's charge to the jury and the jury's findings, which supported the contentions of the Bennetts, are supported in the testimony. The appellant in its brief makes no complaint of the sufficiency of the evidence to sustain the findings of the jury and brings forward only one complaint to one portion of the court's charge.

The appellant's first eight points complain of various statements and arguments by attorneys for appellees on the trial and in its ninth point it complains of the action of the trial court in permitting counsel, while examining the jury panel at the opening of the trial, to ask prospective jurors

whether they would be influenced or prejudiced by the fact that liquor was found in the car of appellees. In its tenth point appellant complains of the wording of the special issue submitted on the question of damages. By its eleventh point the appellant complains of the action of the trial court in refusing to consolidate this case with another cause then pending in the same court, J. F. Campbell v. Airline Motor Coaches, Inc.

While the witness Dr. Foster was testifying in regard to his treatment of Mrs. Bennett, he was asked several questions by counsel for appellant, Mr. Henry Strasburger, as to why the broken bones in Mrs. Bennett's leg had not healed, and he stated that he did not know the reason for this failure to heal, but that short, stout persons, such as Mrs. Bennett, had greater trouble in obtaining union in bones than thin persons. Counsel then asked the doctor if he had tested her blood to see if that had anything to do with it. Later in argument to the jury one of the attorneys for appellees criticized Mr. Strasburger for asking the question, and used the following words: "Mr. Strasburger, would you cast that kind of insinuation on an innocent lady without a thing to justify it?" Later his cocounsel made further argument to the jury and further criticized Mr. Strasburger for asking the question about a blood test of Mrs. Bennett. We believe counsel was not in error in commenting upon how his adversary was conducting his case. We overrule this contention of appellant in view of the holding in City of Waco v. Killen et al., Tex.Civ.App., 59 S.W. 2d 940.

Appellant's second point complains of repeated references by appellees' counsel to the fact that one of counsel was from Dallas and contends that such conduct was appealing to the prejudice of a local jury against the attorney because he was from Dallas. The portion of the argument complained of is set out in bill of exception No. 3, and is too long to be quoted here. A number of able attorneys had participated in the trial of the case on both sides of the controversy, some from Houston, some from Dallas. Mr. Foreman, one of the attorneys for appellees, in his argument referred to different attorneys, where they were from, said the bus company had gone to Dallas and hired Mr. Strasburger's firm and sent him down there as the ace in the hole, and made several references to the

type of duties which he thought would be assigned on the trial to different members of appellant's various attorneys participating. No objection was taken to the argument at the time. We have read the entire argument and find nothing so prejudicial and inflammatory which could not have been cured by an objection and some instruction to that effect by the court. We find no prejudicial error in the argument presented which will warrant reversal.

The third point complains of that portion of the argument of one of appellees' attorneys in stating in regard to Mr. Henry Strasburger, one of appellant's attorneys, that "the only corn Henry ever thinned was up in about the 15th story of the Waldorf Hotel, and I bet he thinned that with ginger ale." The third point complains of the portion of the argument of appellees' counsel as an unjustified attack upon Mr. Henry Strasburger, one of counsel for appellant. Mr. Strasburger in his argument said a farmer would understand that if a man claimed to have planted 100 acres of cotton in November and picked 100 bales in January, the jury would know he was a liar. Mr. Foreman, one of the attorneys for appellees, in his argument referred to such argument, "talk about farmers, I bet the only corn Henry ever thinned was up in about the 15th story of the Waldorf Hotel, and I bet he thinned it with ginger ale." While we are unable to follow the reasoning and do not approve counsel's argument complained of, we are at the same time unable to agree with the contention of the appellant that such remarks resulted in harm to it upon the trial.

When the witness D. W. Hicks, a Texas Highway Patrolman, was on the witness stand, having been called by the appellant, he was asked to describe what he had found at the scene of the accident with reference to marks on the surface of the bridge. While he was answering the question he was interrupted by one of counsel for appellees who said, "Wait a minute, your Honor, please, he don't know where the point of impact is." Counsel for appellant then withdrew the question and counsel for appellee then said, "In view of his conduct on the stand before we are going to ask him not to volunteer any statements and ask the court to admonish him just to answer the question." Appellant excepted to the remark of counsel as to the conduct of the witness on the previous trial. The court then

stated to the jury, "Gentlemen, you will not consider that statement." The appellant contends that such statement by counsel was informing the jury of something which had happened at the former trial of the law suit and hence was error. We can not agree that such a statement, especially when followed by the court's instruction to the jury not to consider it, had any harmful result to the appellant. Even when construed in its most sinister light, the statement "in view of his conduct on the stand before we are going to ask him not to volunteer any statement," could only convey the impression that the witness had volunteered statements before. Such a charge against the witness certainly presents no serious indictment even if true, and in this instance we find no reversible error presented.

While J. F. Campbell, a witness called by the appellees, was on the witness stand he was asked upon cross examination whether he and his wife had a suit pending against the same defendant, growing out of the same accident as the one which was the subject of the present suit. He stated that he did have such a suit and then was asked the question, "How much are you suing for?" Appellees objected to the question and the court overruled the objection. Counsel for appellees took exception to the ruling of the court and then stated: "Judge Murphy sustained the same objection in the trial of this case before." The same law suit had been tried previously in another district court of Polk County, Texas, in which Judge E. T. Murphy presided. The trial from which this appeal is taken was held before Judge W. B. Browder, who resided in Conroe. Judge Murphy's home is in Livingston, where the present case was then being tried. Appellant argues that to permit the appellees' counsel to state that Judge Murphy's ruling was the opposite of Judge Browder's on the same point, destroyed the effect of the witness' answer to the question upon the theory that the local jury would probably believe their fellow-townsman more likely to be correct than some other district judge and that appellant was harmed by such conduct. We are unable to agree with such a contention. Counsel should not have informed the jury of any rulings or happenings in a former trial, but we note the argument was made to the court and not to the jury and the jury was promptly instructed by

the court that they were not to consider the remarks by the counsel. We believe no reversible error is presented in this point.

When the appellee, Mrs. Elva Bennett, had completed her testimony on direct examination, on cross examination she was asked whether she wished to rest a while before the questions were started. She replied, it was all right to proceed without her resting, then she was asked the question, "You have a lady attendant with you now?" She answered, "Yes, sir." Then she was asked the question, "When you testified last December she did, not attend you, did she?" She replied, "No, sir." Counsel for the appellees then objected in the following language: "We object to that because we want to say the lady was in here, and he had us put her out. The record will reflect that fact." Exception was taken to the remark of counsel that it was in the nature of unsworn testimony, and they asked that the jury be instructed not to consider it. The court then instructed the jury not to consider the remark.

In view of the well established fact in the testimony that Mrs. Bennett was severely injured and had had almost all the lower half of her body encased in a cast since the time of the accident, we think it of no importance whether she did or did not have an attendant with her in the court room at the former trial. Counsel should not have given unsworn testimony to the effect that she did have an attendant and that opposing counsel had been instrumental in having the attendant put out of the court room, and we do not approve such conduct, but such an irregularity was cured by the prompt instruction of the trial court.

The seventh point of the appellant grouped together various remarks and questions and objections on the part of counsel for appellees during the introduction of the testimony on the trial of the case. These matters relate largely to objections made by counsel for appellees to offered testimony in argument made to the court in taking bills of exception when the court overruled the same. These arguments and statements were made to the court and must be considered as such. The trial court instructed the jury to disregard such statements when he was requested to do so. To sustain appellant's contention that these statements and argu-

ments to the court present reversible error we would have to assume that the members of the jury completely disregarded the duties of their office and also completely disregarded the instructions of the presiding judge. We do not agree with the contention of the appellant that such actions on the part of counsel for appellees amounts to a repeated, persistent effort to prejudice the jury against one of the attorneys for appellant, and of offering testimony for the sole purpose of seeking to prejudice the jury against the appellant. Some matters are presented in this point which are of questionable propriety but they are not of so serious a nature as to require a reversal.

■ When Mr. C. D. Thomas, president of the appellant company, was on the witness stand he was asked by counsel for appellees, speaking of Mr. Barrow, another witness for the appellant who was then driving for the appellant company, "Do you know whether or not he is kin to Clyde Barrow?" The court sustained the objection to the question. We find no merit in the appellant's contention that the asking of such a question prejudiced the rights of the appellant in any way.

■ In the examination of prospective jurors, appellees' counsel was permitted to ask prospective jurors the following question: "Would the mere presence of a quart of rum and a piece of a bottle of rum or liquor in our car prejudice you at all in this case?" Appellant contends that in view of its defense that all or some of the occupants of the car which collided with its bus were intoxicated at the time of the collision, such questioning committed the prospective jurors to the proposition that they would not be influenced or prejudiced by the fact that liquor was found in the car and would not consider such testimony in answering the various special issues to be submitted to them. We do not believe that the statement by the prospective juror that the mere presence of intoxicating liquor in the car would not prejudice him against the occupants of the car amounts to a commitment by the members of the jury to disregard the presence of intoxicating liquor in the car. Such question does not require the juror to state what he would do with certain evidence which would be offered in the case nor to state what his verdict thereon would be. We do not believe the cases of Parker v. Schrimsher, Tex.Civ.App.,

172 S.W. 165 and Campbell v. Campbell, Tex.Civ.App., 215 S.W. 134, cited by the appellant, are applicable to the question at issue here.

■ The court in its charge submitted special issue No. 15, as follows:

"What sum of money, if any, do you find from a preponderance of the evidence, if paid now in cash, would fairly and reasonably compensate plaintiff, Mrs. Elva Bennett, for the injuries received by her on the occasion in question?

"You will answer this question by stating the amount in dollars and cents, if any you find.

"In answering the foregoing Special Issue, you will take into consideration the following elements of damages and none other:

"The pecuniary loss, if any, you find from a preponderance of the evidence, Mrs. Elva Bennett has suffered up to the present time, and will in all probability suffer in the future, if any, by reason of the injuries received by her on the occasion in question.

"The physical pain and mental anguish, if any, she has undergone up to the present time, and will, in all reasonable probability suffer in the future, if any, by reason of the injuries received by her on the occasion in question.

"The Doctor and hospital bills, if any, she has incurred up to the present time, and will in all reasonable probability incur in the future, if any, by reason of such injuries.

"In figuring the amount of damages, if any, you must deduct and must not allow anything for the thyroid and nervous trouble, if any, with which Mrs. Bennett was suffering at and before the collision."

Appellant objected and excepted to such issue on the ground that it allowed a double recovery in that it allows her to recover pecuniary loss she has suffered up to the present time, will suffer in the future, together with physical pain and mental anguish in the past and in the future. Appellant, in its tenth point, assigns this portion of the charge as error but cites no authority in support of its contention. This type of submission of a special issue on damages has been approved by the courts and we overrule this contention of appellant. See Houston Electric Co. v. Seegar, 54 Tex.Civ.App. 255, 117

S.W. 900; Sproles Motor Freight Lines, Inc., et al. v. Juge, Tex.Civ.App., 123 S.W. 2d 919.

In its eleventh point, appellant complains of the refusal of the trial court to consolidate this case with the case of J. F. Campbell v. Airline Motor Coaches, Inc., pending in the same court, since both cases grew out of the same accident, and attorneys representing the injured parties in both cases were the same. The motion to consolidate was presented to the discretion of the trial court and the action of the court thereupon will not be disturbed on appeal except where clear abuse of discretion is shown. No such abuse of discretion is shown here and appellant's contention is overruled.

The judgment of the trial court is affirmed.