The TRAVELERS INSURANCE COMPANY, Appellant,

v.

Nell HEIM et vir, Appellees.

No. 7765.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 21, 1967.

Rehearing Denied March 21, 1967.

Howard Waldrop, Atchley, Russell, Hutchinson & Waldrop, Texarkana, for appellant.

Scott Baldwin, Jim Ammerman, Jones, Jones & Baldwin, Marshall, for appellee.

DAVIS, Justice.

A compensation case. Plaintiff-appellee, Nell Heim, sued defendant-appellant because of an accidental injury she sustained on January 8, 1965, while she was employed by the Blue Buckle Overall Company, Inc., of Marshall, Harrison County, Texas. She alleged that the injury occurred while she was pulling real hard on a heavy piece of material and hurt her left hand, arm, entire body and nervous system. Appellant took the position that the injury occurred only to her left arm below her elbow and, in the alternative, to the loss of the use of her left arm.

Trial was to a jury which found that Mrs. Heim was injured on January 8, 1965; it consisted of injury to her left shoulder and neck; the injury resulted in total disability; the injury was a producing cause of the total disability; the beginning date of the total disability was January 8, 1965; and, such total disability is permanent. The jury further found that there was no partial disability; the injury to her left wrist extended to and affected her left shoulder and neck; the injury caused her to have to be hospitalized in January, 1966; and, the medical services rendered to her by Dr. George W. Tate were necessary. The jury further found that injuries were not limited to her left arm. Appellant has perfected its appeal and brings forward 42 points of error.

By its first 22 points, appellant complains of errors on the part of the trial court in submitting certain special issues to the jury on the ground that there is no evidence, insufficient evidence, and the evidence is insufficient to support the jury's answers to the special issues. These points are grouped for argument in appellant's brief. We have carefully examined the statement of facts, and find the evidence fully sufficient to uphold the jury's verdict. We must review the statement of facts in the light most favorable to the verdict. Fisher Construction Company, et al. v. Riggs, et al., (1959) 160 Tex. 23, 325 S.W.2d 126. The evidence shows that Mrs. Heim was a well nourished young lady about 23 years of age, married, and the mother of one little girl. She had been working for some time and had never before received any injury. On January 8, 1965, she was a surger on a sewing machine. She was using a heavy machine to stitch blue jeans and overalls. On the day of the injury she was working with extra rough material (extra heavy material) and required her to do quite a bit of pulling to make them match in the crotch. She was required to pull back on the material extremely hard with her left hand and in doing so, there was a sharp pop in her left wrist, and pain in her arm, shoulder, and her neck. She reported the injury immediately. In the course of her treatment, she was sent to about 7 doctors; two in Shreveport, Louisiana; one in Scott-White Hospital in Temple, Texas; and two or three in Longview, Texas. Only two doctors testified in the trial of the case. One was Dr. George W. Tate of Longview, Texas. The appellant paid for her first treatments by Dr. Tate, who testified very positively that she had always complained of pain in her left wrist, arm, shoulder and neck. At first, Dr. Tate did not think there was anything wrong with her shoulder and neck, and the injury was only to her left wrist. Soon after the injury, there was a swelling appeared on her left wrist which had to be removed by surgery. It was diagnosed as a ganglion. Dr. Tate testified that she had a nerve injury that resulted in an injury to her neck and left shoulder. He testified that she had alter nerve function which apparently caused muscle spasm in her neck and left shoulder that causes cramps at the base of the head, in the neck and her left shoulder. He further testified that the curvature of her neck was more straight then was normally found. He testified that Mrs. Heim was totally and permanently disabled from receiving and holding a job of regular employment.

Dr. T. M. Oxford of Shreveport, Louisiana, the orthopedic surgeon who did the surgery on Mrs. Heim's left wrist to remove the ganglion, testified for the appellant. He testified that he had seen Mrs. Heim on July 27, 1965, and on that day he did the surgery. He did not see Mrs. Heim but on two subsequent occasions. He did not place any disability at all on Mrs. Heim's left wrist, or the loss of the use of her left arm. Dr. Oxford did not make a physical examination of Mrs. Heim to see whether or not there was any injury to her nervous system as the result of the injury.

There were other doctors who saw her there in Marshall that are excellent doctors, and they were not called to testify.

Dr. Tate used certain items to define her pain injuries such as a cable or rope. His testimony seems very reasonable and was apparently believed by the jury. He demonstrated in great detail the nerve could be impeded if not prevented by scar tissue. Dr. Tate testified very positively that this injury to a nerve accounted for the pain and disability that she had in the area of her shoulder and neck; and, that her condition was worse than when he first saw her, because she had more atrophy, more weakness, and more muscle spasm. If the injury was only to Mrs. Heim's left arm, she alleged and proved that the injury extended to and affected other portions of her body. There is substantial evidence, and the evidence is fully sufficient, to support the verdict. In re King's Estate (1951) 150 Tex. 662, 244 S.W.2d 660. The points of error are overruled.

By its points 23–26, appellant says the trial court erred in refusing to grant it a mistrial based upon the argument of one of Mrs. Heim's attorneys, wherein he referred to the appellant as being like an octopus; where he, in answer to an objection, said that their tactics of the trial were like an octopus; the comment of the trial court in response to its motion for mistrial is as follows: "You of the jury have observed the argument of all of the attorneys during the trial of this case. I overrule the motion for mistrial"; and, the accumulative effect of the acts of misconduct in connection with the comments of the court vested such prejudice upon the appellant as to compel a mistrial.

To set the record straight, the following is what happened:

"* * * Now on that, let me just say this parenthetically, they try to come in here, and they are like an octopus, when they get in trouble they squirt—

MR. WALDROP: If the court please, I am going to object to that as being highly prejudicial, to refer to my client as an octopus, and at this time I would like to

move for a mistrial based upon Mr. Baldwin's reference to Travelers Insurance Company as an octopus.

MR. BALDWIN: Well, I didn't refer to the Insurance Company as an octopus, your Honor, I said their tactics of the trial—

MR. WALDROP: If the court please, I again move for a mistrial, and I think Mr. Baldwin is deliberately compounding his error by his reference to me, he is talking now about my acting as an octopus. It is highly prejudicial.

THE COURT: You of the jury have observed the conduct of all the Attorneys during the trial of the case. I overrule the motion for a mistrial."

■ As we view the evidence as a whole that was presented in the trial of this case, we cannot conceive of how the argument could have persuaded any juror of ordinary intelligence to agree to the verdict that would be contrary to the one that was agreed upon. It does not seem that the objectionable argument does require a reversal. McCorstin v. Mayfield (CCA 1955) 274 S.W.2d 874, error dismissed; Pacific Employers Insurance Company v. Guillory (CCA 1958) 310 S.W.2d 584. In 4 Tex. Jur.2d 588, Sec. 946, it is said, in part, as follows:

"* * * To justify a reversal a substantial probability must be shown that the jury's findings or verdict were, by the improper argument or conduct of the counsel, affected adversely to the losing party.

"* * * The burden is on the complaining party to show that the improper argument was reasonably calculated to cause and probably did cause rendition of an improper judgment.

"* * * There is no presumption of prejudicial error where the impropriety in the argument is immaterial, or the argument is based on immaterial matters."

It presents quite a burden upon the Court of Civil Appeals to *assume* that certain arguments made in the trial of a case actually caused the rendition of an improper judgment. It is first the duty of the trial judge to make that decision. When the trial judge exercises his "rather fine discretion", Benson v. Missouri, K. & T. Ry. Co. (CCA 1946), 200 S.W.2d 233, W.R., N.R.E., the argument would not result in the entry of an improper judgment and they raise that point on appeal, it presents to the Court of Civil Appeals a most difficult task. Dyer v. Hardin (CCA 1959) 323 S.W.2d 119, W. R., N.R.E. Rule 434, V.T.R.C.P., the second paragraph, reads as follows:

"Provided, first, that no judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, *unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment* in the case, or was such as probably prevented the appellant from making a proper presentation of the case to the appellant court; and if it appear to the court that the error affects a part only of the matter in controversy, and the issues are severable, the judgment shall only be reversed and a new trial ordered as to that part affected by such error." Emphasis added.

Many cases have been decided both ways. It seems that the Supreme Court of Texas is getting away from so many reversals because of oral argument. In the case of Whitener v. Traders and General Ins. Co. (1956) 155 Tex. 461, 289 S.W.2d 233, in writing on the question of jury argument, the court said:

"That portion of the argument which the Court of Civil Appeals considered the most harmful arose from counsel's efforts to belittle medical testimony offered by respondent in connection with a prior back ailment of petitioner. The statement is as follows:

"'One of the doctors got on the stand and said it was evolutional melancolia. "What is that, doctor?" "Oh, that is the middle age, that is the change of life. Like a woman, the middle age change of life". Another doctor, "What is his trouble, Dr. Wilcox?" "Old age, it is old age." I was expecting that maybe Dr. Wolfe would come in here and say in this case of Mr. Whitener's maybe he ought to have his unnecessary female organs removed, and let us hear it. Talk about inconsistencies.'"

"Respondent contends that the effect of this argument was to comment upon the fact that Dr. Wolfe was not called as a witness and would have testified differently from other witnesses for respondent. We do not so interpret the argument. Dr. Wolfe was a physician of petitioner's own choice. It seems that if any inference was to be drawn it was rather that petitioner's own doctor would have agreed that petitioner's condition was due solely to old age rather than to an injury. *At worse the remarks were inappropriate and a misplaced attempt at humor.*" Emphasis added.

In the case of The Travelers Insurance Company v. Broadnax (CCA 1963) 365 S. W.2d 683, n. w. h., there is quite a discussion on adverse prejudicial jury argument. See, also, the case of Traders & General Insurance Company v. Smith (CCA 1958) 311 S.W.2d 91, W.R., N.R.E.; Aultman, et al. v. Dallas Railway and Terminal Company (1953) 152 Tex. 509, 260 S.W.2d 596.

Appellant relies most heavily upon the case of Southwestern Greyhound Lines, Inc. v. Dickson (CCA 1949) 219 S.W.2d 592, N.W.H. The court relied upon the case of Smerke v. Office Equipment Company (1941) 138 Tex. 236, 158 S.W.2d 302. The Smerke opinion was written prior to the adoption and effect of Rule 434, Vernon's Rules of Texas Civil Procedure. In the

case of Condra Funeral Home v. Rollin (1958) 158 Tex. 478, 314 S.W.2d 277, the Supreme Court, in effect, overruled the decision in the Dickson case, supra. The points are overruled.

We have carefully examined and considered each of appellant's points of error 27 through 42, and find that each of them do not contain any merit. They are overruled.

Judgment of the trial court is affirmed.