## RED ARROW FREIGHT LINES, Inc., v. MATZ.

### No. 11435.

Court of Civil Appeals of Texas.
San Antonio.

Aug. 2, 1944.

Rehearing Denied Oct. 11, 1944.

Taylor, Wagner & Taylor, of Brownsville, for appellant.

P. G. Greenwood, of Harlingen, for appellee.

MURRAY, Justice.

This suit was instituted by E. O. Matz against the Red Arrow Freight Lines, Inc., seeking to recover the value of three transformers and other electrical equipment, all of the total value of $531.-42, alleged to have been destroyed by fire while being held upon the docks of the defendant at Harlingen, Texas. The defendant defended upon the theory that this electrical equipment arrived at Harlingen on March 19, 1943, and consignee was immediately notified of such fact; that the fire did not occur until March 30, 1943, and that, under the regulations of the Railroad Commission of Texas and the provisions of the bill of lading under which the equipment was shipped, the liability of the defendant ceased after consignee had had ninety-six hours' notice of the arrival of such equipment.

The cause was tried to a jury on the one issue of notice, and upon the jury's finding that plaintiff had not been given proper notice judgment was rendered in favor of plaintiff for the full amount sued for.

This appeal presents but one question of improper argument of counsel for plaintiff.

We here copy the pertinent part of Bill of Exception No. 5, relating to this matter, to-wit:

"Mr. V. W. Taylor, attorney for defendant, in his argument to the jury, emphasized to the jurors they were the exclusive judges of the credibility of the witnesses and discussed at some length the possible interest in the law suit of the various witnesses. Among other things, he said, in substance, that the interest of plaintiff and his wife is one of 'dollars and cents,' while the interest of the defendant's witnesses was only that of their 'Principal.'

"Mr. Paul Greenwood, attorney for plaintiff (having apparently understood, as the Court at first understood, that defendant's counsel meant it was only a matter of 'principle' with defendant's witnesses), in his rebuttal argument to the jury, rather hotly replied, in substance, 'Mr. Taylor says it is only a matter of principle with defendant's witnesses'; whereupon, Mr. Taylor interrupted and vigorously protested that he didn't say it was only a matter of 'principle' with defendant's witnesses but that their only interest was that of their 'principal,' meaning their employer.

"Mr. Greenwood, apparently accepting Mr. Taylor's explanation, then said to the jury, with a show of considerable feeling, in substance: 'The three witnesses who testified for the Defendant in this case would lose their jobs if they had not testified for the Defendant, and Vol Taylor knows it.' Mr. Taylor again jumped to his feet and loudly and vigorously objected to Mr. Greenwood's remarks as being without basis in the record, highly prejudicial, and improper, and asked the court to instruct the jury not to consider the remarks of Mr. Greenwood in the particulars above stated. Mr. Greenwood, in the meantime, continued to address the jury in a loud voice, and Mr. Taylor to make his protests in a loud voice, and it was with some difficulty that the Court was able to stop either of them and have them sit down. Also, during the exchange between counsel, the plaintiff,

E. O. Matz, who was sitting just across the width of about a four-foot table from the jury, rose to his feet and attempted to make some remark. Mr. Matz uttered two or three words, which seemed to the Court to be to the effect that he wanted to say something, but which words were not clearly understood by the Court, and were not understood by Mr. Taylor, but which the jury was in a position to hear, but Mr. Greenwood promptly stopped Mr. Matz and caused him to be seated.

"Whereupon, the Court sustained the objection of defendant's counsel and instructed the jury not to consider the remarks in question of plaintiff's counsel.

"Mr. Greenwood, in continuing his argument to the jury, and still with a show of considerable feeling, stated to the jury, in substance: 'Mr. Taylor says let's be fair. Let's see if Mr. Taylor is being fair. The testimony shows that Mr. Matz was born and raised in this county, and attended school in San Benito, and that the government has enough confidence in him to give him contracts at the Army Air Base amounting to around $40,000.00, but Mr. Taylor tries to cast reflections on his patriotism by asking him what his native tongue is and saying that this is a matter of only dollars and cents with Mr. and Mrs. Matz and would have you believe they would swear a lie for approximately $500.00. He would have you believe this about Mrs. Matz, the little woman you heard testify and whose condition you saw. You saw that she will soon go down into the Valley of the Shadow of Death and give birth to a red-blooded American that will fight for his country.'

"Mr. Taylor contends that he objected to the remarks of Mr. Greenwood last above set out and that the Court sustained his objection and instructed the jury not to consider same, but the Court's recollection is that Mr. Taylor made no objection to such remarks of Mr. Greenwood.

"The foregoing bill of exception having been presented to me by counsel for the defendant and having examined the same, the same is hereby allowed and approved and ordered by the Clerk filed this the 25th day of February, A.D. 1944, but with the statement that the Court believes the remarks, conduct, and show of feeling of Mr. Greenwood before the jury were invited by, and brought on by, Mr. Taylor's said remarks and show of feeling and conduct before the jury, except as to the said statement of Mr. Greenwood, in substance that, 'The three witnesses who testified for the Defendant in this case would lose their jobs if they had not testified for the Defendant, and Vol. Taylor knows it.'"

It is clear that the question of notice was the controlling question in the case and that three employees of the freight line company had testified that such notice was given and Mr. and Mrs. Matz and one other witness had testified, in effect, that such notice had not been given. It is also clear that it was the duty of the employees of the freight line company who were witnesses in the case, to have given such notice, and if they had admitted they did not give the notice they would have been admitting they had neglected their duty. On the other hand, if Mr. and Mrs. Matz and his employe had admitted they did receive such notice there could have been no recovery. It is therefore apparent that the witnesses on each side were what might be called interested witnesses and their testimony was very much in conflict.

It occurs to us that under all the circumstances it would not have been improper for attorney for appellee to have argued that if appellant's witnesses had admitted that they failed to give Matz notice of the arrival of the electrical equipment they might have been fired and that opposing counsel should have been aware of this possibility. However, such argument was referred to as border-line argument in Texas & N. O. Ry. Co. v. Sturgeon, Tex.Civ.App., 177 S.W.2d 340, reversed Tex.Sup., 177 S.W.2d 264. But when counsel for appellee stated that "The three witnesses who testified for the defendant in this case would lose their jobs if they had not testified for the defendant, and Vol Taylor knows it," he went too far and the trial court properly instructed the jury not to consider the argument.

We are of the opinion that the argument was not of such an inflammatory and prejudicial nature that an instruction from the court to the jury not to consider the argument would not remove the harmful effect.

We take the following quotation from Ramirez v. Acker, 134 Tex. 647, 138 S.W. 2d 1054, 1056, to-wit:

"'Assignments Seven, Eight and Nine complain of improper argument of counsel for defendants Ackers and Arnetts. They

are presented together, and we shall so consider them. In effect they are: (a–7) That counsel told the jury that plaintiff's suit was one that "stinks" and that plaintiff was the victim of a scheme or design by somebody to use him to their advantage and not to the advantage of plaintiff, and that somebody ought to be indicted for filing and prosecuting the suit; it being urged that said argument was prejudicial in that it left the inference in the minds of the jury that plaintiff's counsel, or others, conspired with plaintiff to bring the suit for some malicious or fraudulent purpose; (b–8) that defendants were not going to pay "blood-money" in the form of a settlement as had been exacted from others who had made settlements, the objection to said argument being that same was without support in the record and prejudicial; and (c–9) that the suit was brought primarily for the benefit of the Stanolind Oil Company, said argument was without evidence to support same and was prejudicial and calculated to deprive plaintiff of a fair and impartial verdict by the jury. The court approved these bills of exception presenting these matters with the qualification that no objections or exceptions were taken to any of said arguments when made.'

"It is not the purpose of the rules announced by this court to unreasonably limit counsel in discussing the facts and issues raised by the evidence. Great latitude must be allowed in this regard. Counsel ofttimes in their zeal in their arguments to the jury make statements the effect of which can be controlled by the court's telling counsel to desist making same and by instructing the jury to disregard same.

"After a careful consideration of the record before us, and the peculiar facts involved in this case, we think the argument of counsel was of such a nature that, if it had been objected to, a reprimand by the court to counsel for making such argument and an instruction by the court to the jury to disregard such argument would have rendered it harmless. Under the state of this record it was the duty of counsel for Ramirez to make objection to the argument at the time it was made, if it was desired to reserve exception to such argument. This was not done. Therefore the exception was waived."

The memorandum opinion rendered on August 2, 1944, will be withdrawn and this opinion substituted therefor. The judgment heretofore entered affirming the cause will be adhered to and appellant will be given fifteen days within which to file a second motion for rehearing, in the light of our written opinion, if it desires to do so.

Appellant's first motion for rehearing is overruled.